Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000206
17-DEC-2013
08:27 AM

NO. CAAP-10-0000206

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

FREEDUS W. WILTON, II, Petitioner-Appellant, v.
STATE OF HAWAIʻI, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(S.P.P. NO. 01-1-0006(1); CR. NO. 97-0050)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, Chief Judge, Leonard and Ginoza, JJ.)

Petitioner-Appellant Freedus W. Wilton, II (**Wilton**) appeals from the Corrected Findings of Fact, Conclusions of Law, and Judgment Denying Rule 40 Petition for Post-Conviction Relief, filed on November 9, 2010 (**Judgment Denying Rule 40 Relief**), in the Circuit Court of the Second Circuit (**Circuit Court**).[1]

On July 30, 1998, Wilton was convicted of Burglary in the First Degree, Robbery in the First Degree, Attempted Murder in the First Degree, Place to Keep Firearm, Carrying or Use of Firearm in the Commission of a Separate Felony, and Use of Deadly or Dangerous Weapon in the Commission of a Crime.

Wilton appealed his convictions, but on July 29, 1999, he voluntarily stipulated to dismiss his appeal so that he could file a Petition for Post Conviction Relief.

On March 20, 2001, Wilton filed a Verified Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody (**Petition**).  Wilton claimed that he received ineffective assistance of trial counsel because:  (1) trial

---

[1]  The Honorable Joel E. August presided.

counsel failed to present evidence of his physical disability resulting from Multiple Sclerosis (**MS**) that prevented him from being able to run, in light of a security guard pursuing the alleged assailant over a substantial distance on foot; (2) trial counsel failed to allow him to testify at trial; and (3) trial counsel failed to present any evidence in his defense.

On August 26, 2004, Wilton filed an Amendment to Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody (**Amended Petition**). Wilton asserted two additional claims: the sentence imposed was an illegal sentence and appellate counsel was ineffective in perfecting his direct appeal.

On December 1, 2004, the Circuit Court issued its Findings of Fact, Conclusions of Law, and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody.

On March 21, 2007, this court issued a Summary Disposition Order that affirmed the denial of Wilton's Petition and Amended Petition.

On November 13, 2007, the supreme court issued an opinion in Wilton v. State, 116 Hawai'i 106, 108, 170 P.3d 357, 358 (2007), which vacated this court's affirmance and ordered that a hearing be held on some of the claims in Wilton's Petition. The court stated that the question presented was "whether the ICA gravely erred in holding that the [court] did not err in denying [Petitioner's] HRPP Rule 40 petition where his trial counsel's failure to present exculpatory evidence in his defense constituted ineffective assistance of counsel[.]" Id. at 110, 170 P.3d at 361. The court noted that Wilton's affidavit in support of the Petition stated that Wilton had been unable to run due to MS for some time prior to his diagnosis in 1989, and his medical records showed his history of MS and the effect of the disease on his gait, "such that any competent medical expert could have described the meaning of . . . those records[.]" Wilton also averred that he informed his trial counsel of his disability due to MS on more than one occasion. Id. at 113, 170

2

P.3d at 364. The court held that Wilton presented a colorable claim of ineffective assistance of counsel because, if the facts therein were taken as true, specifically that Wilton could not run in the same manner as the perpetrator, coupled with the inability of witnesses to unequivocally identify Wilton as the perpetrator, they could have changed the verdict. Id. at 122, 170 P.3d at 373. The court ordered a hearing only on Wilton's claims regarding his MS evidence, but not Wilton's trial testimony claim. Id. at 123, 170 P.3d at 374.

Beginning on August 7, 2009, the Circuit Court held an evidentiary hearing to address Wilton's claim of ineffective assistance of trial counsel with respect to counsel's failure to present the MS evidence.

On November 9, 2010, the Circuit Court issued the Judgment Denying Post-Petition Relief. Wilton timely filed this appeal.

On appeal, Wilton claims that the Circuit Court erred by denying his Petition. Wilton specifically challenges Findings of Fact (**FOFs**) 22, 28, and 32 as clearly erroneous, and Conclusions of Law (**COLs**) 6, 7, and 8 as wrong. Wilton again argues that he was provided ineffective assistance of counsel because trial counsel failed to adequately investigate Wilton's MS condition.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Wilton's points of error as follows:

Wilton contends that FOF 22 is clearly erroneous because his trial counsel, David Sereno (**Sereno**), obtained his medical records from 1990 to 1994 from a Colorado treatment center. FOF 22 states:

> Relative to the existence of medical records relating to his [MS] condition, Defendant testified that there would have been no medical records relating to his diagnosis or treatment of MS created between January 1990 and February 11, 2000, when he was seen by the medical staff at Halawa Prison.

Wilton does not challenge that there are no medical records relating to his diagnosis or treatment from 1995 to February 11, 2000. Thus, in this respect, FOF 22 is not clearly erroneous.

Sereno testified that he had no recollection of receiving any of Wilton's medical records. The Circuit Court found Sereno to be a credible witness. See FOF 40. "An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." Porter v. Hu, 116 Hawai'i 42, 60, 169 P.3d 994, 1012 (App. 2007) (quoting State v. Eastman, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996)).

However, Wilton testified at the hearing that he and Sereno discussed "that he [Sereno] had read the records, so the only way he could do that is if he had them so . . ." Sereno also stated that if he had received medical records, he would have looked at them. Assuming, arguendo, that FOF 22 is, in part, erroneous in that Sereno did review Wilton's medical records from 1990 to 1994 and/or that such records existed, as discussed below, it would not aid Wilton's claim that he received ineffective assistance of trial counsel. Thus, for the reasons discussed below, any error included in FOF 22 is harmless error.

Wilton argues that FOF 28 is clearly erroneous. FOF 28 states:

> The defendant's father testified that he spoke to Mr. Sereno several times about his son's [MS] condition and its recurrent symptoms and that Mr. Sereno had stated he had researched the issue and that he did not intend to present such evidence.

In support of his claim, Wilton argues that Wilton's father "testified that he expected expert testimony regarding Wilton's MS to be presented." Even if Wilton's father expected certain testimony to be presented at trial, it does not change the fact that Sereno informed Wilton that no such testimony would be presented at trial. Thus, FOF 28 is not clearly erroneous.

FOF 32 states:

> Defendant testified that his decision not to testify was conditioned upon the introduction of all of his medical evidence. However, Defendant never stated that any records existed between January 1990 and the trial in April 1998.

In support of his claim that FOF 32 is clearly erroneous, Wilton argues that he testified that he signed a release form for Sereno to obtain the medical records for 1990 to 1994 from a Colorado treatment center, and that he believed that Sereno had such records. Wilton's argument rests on the implied argument that, because he signed a release form to obtain his medical records from 1990 to 1994, a finding that he never testified that any records existed from January 1990 to trial in 1998 is clearly erroneous. Again, Wilton does not challenge that medical records for 1995 to April 1998 do not exist. However, Wilton testified that he had recently attempted to obtain his medical records for 1990 to 1994 from a Colorado treatment center, but that they had destroyed them after seven years. Thus, Wilton sufficiently stated that such records existed and FOF 32 is, in part, clearly erroneous. However, for the reasons discussed below, we again conclude that such error is harmless.

The basic premise of Wilton's ineffective assistance of counsel claim is that Sereno failed to introduce evidence that Wilton could not have run the same way witnesses described the perpetrator as having fled on foot from the apartment complex where the crimes were committed. Wilton posits that such evidence would have aided in creating reasonable doubt because it would tend to show that Wilton was misidentified as the perpetrator of the crimes. Thus, Wilton argues that Sereno's failure to introduce such evidence resulted in the withdrawal or substantial impairment of a potentially meritorious defense. In conjunction with this argument, Wilton challenges COLs 6, 7, and 8.

Wilton characterizes this argument as a failure to investigate. Wilton claims that he received ineffective assistance of trial counsel because Sereno failed to adequately investigate Wilton's physical limitations due to MS. Wilton

argues: "Given Wilton's diagnosis and corroboration by Krau and [Wilton's father], Sereno had [a] duty to further investigate and gather the underlying facts of the case and Wilton's physical limitations. Sereno failed to gather the underlying facts of the case." Wilton also faults Sereno for failing to have Wilton examined by a physician at the time of his arrest, which was only days after the crimes occurred.

Even if Wilton's assertions and claims regarding Sereno's performance and knowledge prior to trial were true, it would not negate that Sereno's decision not to introduce such evidence at trial was a tactical one. Although Wilton vigorously contests whether there were medical records for 1990 to 1994, such a finding would only support a conclusion that Sereno knew of Wilton's MS diagnosis, and potential evidence supporting that diagnosis, prior to trial. However, it is not disputed that Sereno had knowledge of Wilton's diagnosis of intermittent MS prior to trial. Sereno testified that he independently researched the issue prior to trial. However, the earlier medical records would not prove Wilton's assertion that he could not run at the time of the crime in 1997. Notably, Wilton does not claim that such records would have established that he could not run in 1997. The existence of Wilton's medical records for 1990 to 1994 simply establishes that he was diagnosed with intermittent MS as early as 1990, a fact that is not disputed. Wilton does not challenge, and there is no evidence of, medical records after 1994 up to the time of trial.

Wilton also points to Sereno's failure to obtain a medical examination to determine the extent of Wilton's inability to run as the perpetrator did. At best, a post-arrest medical examination might support a contention that Wilton was incapable of running well at the time the crimes were committed. However, Sereno admitted that he was aware that Wilton could assert that he could not run as part of his defense. In fact, Sereno testified that he and Wilton discussed getting a physical examination that would corroborate the MS, but he and Wilton decided they were not going to use it as part of the defense, and

Wilton was okay with that. See FOF 25. Sereno stated that Wilton initially was not happy when told that the MS evidence would not be introduced until he explained to Wilton why he did not want to use it; after listening to Sereno, Wilton agreed. See also FOF 38 (stating that Wilton's criminal defense expert witness did not testify that the prevailing professional norm is to obtain an independent medical examination of a defendant in the circumstances of this case). A post-arrest medical examination would not provide additional or different facts upon which to weigh whether such evidence would actually be presented at trial. Wilton cannot complain that he received ineffective assistance of counsel when he agreed that evidence of MS would not be presented at trial.

Further, during the hearing, Sereno explained the reasoning for not presenting evidence of Wilton's MS. Sereno testified that, if he brought in evidence regarding Wilton's MS diagnosis, there would also likely be evidence of Wilton's extensive judo background, including that he was extremely accomplished and an instructor. Sereno also stated, and a police officer corroborated, that there was evidence that Wilton went pig hunting, and there is a good amount of running involved over roots, running on trails which are uncut, and Wilton had no apparent problem with that. Further, Sereno contacted Wilton's employer, and there was no evidence that he had difficulty doing his job, which involved carrying heavy dive tanks, heavy lifting, and moving, all of which were inconsistent with a MS defense. Sereno further testified that he strategically decided not to proffer evidence of Wilton's MS because it would provide an opening to additional evidence and argument by the prosecution. Namely, the perpetrator tripped while being chased, but when Sereno investigated the scene, there appeared to be nothing to trip over. As such, entering the MS evidence would allow the prosecutor to argue that Wilton's leg dragged a little bit due to the MS, so he could not pick up high enough, he fell, and then did a judo roll. Sereno was concerned that all of this evidence would be presented at trial if Wilton asserted that he could not

run because of MS.  Sereno also believed that raising an MS defense would damage their case by leaving the jury with the impression that the defense was just "trying to come up with something" and "creating a lie."  Based on these considerations, Sereno stated that he had no doubt that it would hurt the case to put in any evidence of the MS defense.  Assuming that Sereno could show that Wilton was not able to run well, Sereno considered the possibility of presenting such evidence, including offering to obtain a current medical examination to confirm Wilton's MS diagnosis, but he and Wilton agreed that it would not be presented based on a tactical decision.  When viewed as a whole, the assistance provided by Sereno was within the range of competence demanded of attorneys in criminal cases.  See Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).  "[M]atters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight."  State v. Richie, 88 Hawai'i 19, 39-40, 960 P.2d 1227, 1247-48 (1998) (citation and internal quotation marks omitted; emphasis in original).  For these reasons, we conclude that COLs 6, 7, and 8 are not wrong.

Accordingly, we affirm the Circuit Court's Corrected Findings of Fact, Conclusions of Law, and Judgment Denying Rule 40 Petition for Post-Conviction Relief, filed on November 9, 2010.

DATED: Honolulu, Hawai'i, December 17, 2013.

On the briefs:

Keith S. Shigetomi
for Petitioner-Appellant

Peter A. Hanano
Deputy Prosecuting Attorney
County of Maui
for Respondent-Appellee

Chief Judge

Associate Judge

Associate Judge